UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN CRAWFORD, #193496,

        Petitioner,

v.                           CASE NO. 2:18-CV-13159
                                 HON. GEORGE CARAM STEEH

PAT WARREN,

        Respondent.

_____/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I.   Introduction

Michigan prisoner Darrin Crawford ("petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  The petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, second offense, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  He was sentenced, as a second habitual offender, MICH.

COMP. LAWS § 769.10, to 23 to 35 years imprisonment on the assault

conviction, a concurrent term of 3 to 5 years imprisonment on the felon in

possession conviction, and a consecutive term of 5 years imprisonment on

the felony firearm conviction in 2013.  In his pleadings, he raises claims

concerning the administration of the jury oath, the sufficiency of the

evidence, and the validity of his sentence.  For the reasons stated herein,

the Court denies the petition for a writ of habeas corpus.  The Court also

denies a certificate of appealability and denies leave to proceed in forma

pauperis on appeal.

## II.    Facts and Procedural History

The petitioner's convictions arise from a confrontation that led to a

shooting at a residence in Detroit, Michigan on August 3, 2013.  At trial, the

victim, Frederick Light, testified that he took a gas grill and a puppy to the

home of a friend, Rodney Turner, that evening.  ECF No. 13-9, PageID.663-

664.  While he was on the porch, the petitioner arrived, struck him in the

back of the head knocking him down, and tried entering the house, but the

door was locked.  Id. at 666-671.  Words were exchanged and a fistfight

ensued.  Id. at  670-671.  When Light fell to the ground and was trying to get

up, the petitioner pulled out a gun, struck him with it, and shot him.  Id. at

673-674.  Light heard more arguing and gunshots.  Id. at 674-675.  Light

suffered a concussion and multiple gunshot wounds.  Id. at 676-677.

Jarmonte Jones, Rodney Turner's cousin, was at the house at the

time of the incident.  He testified that the petitioner, who was his mom's

boyfriend, arrived at the house, that the petitioner punched Light in the back

of the head, that a fight ensued, that the petitioner struck Light with a gun

and then shot him.  Id. at 720-726.  Jones ran to his car and drove home,

but returned later with his cousins and the petitioner fired shots at them.  Id.

at 735-736.

Bradford Johnson, Rodney Turner's brother, testified that he lived with

Turner but was down the street at a friend's house when his cousin,

Jarmonte Jones ran around the corner and told him what happened.  Id. at

758, 760. Johnson went to the house, saw Light bleeding under a truck and

tried to help him.  He heard his sister yell, "he's got a gun," heard gunshots,

and ran around the truck.  The petitioner was the only person he saw with a

gun at that time, and Johnson saw him attempting to reload it.  Id. at 760-64.

When he ran from the house, Light followed, but the shots seemed closer so

Johnson threw Light behind the garage into some bushes.  Id. at 767.

Tradnaha Turner, Rodney Turner's and Bradford Johnson's sister,

-3-

was in the living room of the house when she saw the petitioner arrive and punch Light. Id. at 799. She grabbed the screen door and did not let the petitioner into the house. Id. at 800. The petitioner jumped off the porch, attacked Light, and a fistfight ensued. When she heard gunshots, she slammed the door closed and locked it, then ran upstairs and called 911. Id. at 801-802. When Johnson arrived to help Light, she saw the petitioner with a gun and warned them. Id. at 804-805. As the two men ran away, she saw the petitioner take aim at them, so she pulled out her own licensed gun, a Springfield XD .40 caliber handgun, and shot at the petitioner from an upstairs window. The petitioner walked away and fell down in the front yard of the house across the street. Id. at 804-807.

Several police officers testified at trial. Officer Mary Gross testified that she responded to the scene around 2:00 a.m. to collect evidence. ECF No. 13-7, PageID.420. She recovered two .40 caliber shell casings from the driveway and two .40 caliber shell casings and a Smithfield .40 caliber handgun from inside Rodney Turner's house. Id. at 421, 426. She found a Browning .380 caliber handgun, a holster, two live .380 caliber rounds, a box of .380 caliber ammunition, keys, and bloody clothes on the lawn of the house across the street, as well as a copper bullet jacket fragment. Id. at

-4-

422-428.  She found one shell casing in the .380 caliber handgun, but did not find other .380 caliber shell casings at the scene.  She said that it was dark with poor lighting when she searched the area with a flashlight, and she could not remember if she used a metal detector.  ECF No. 13-9, PageID.623-624, 639.

Officer Eric Smigelski testified that he responded to the scene and found the petitioner bleeding with a gunshot wound in the yard across the street from Rodney Turner's house.  A .380 gun and a holster were lying next to the petitioner.  Id. at 649-653.

Sergeant Larry McSwain, a firearms expert, testified that the five shell casings (four .40 caliber and one .380 caliber) recovered from the scene matched the two weapons (one .40 Smith & Wesson Springfield Armory XDM40 compact semi-automatic handgun and one .380 Auto Browning BDA380 semi-automatic handgun) found at the scene.  ECF No. 13-11, PageID.878.  He also testified that the bullet fragments could have been fired from a .40 caliber gun, but not a .380 caliber gun.  Id. at 882.

The parties stipulated that the petitioner had a prior felony conviction and was not eligible to legally possess a firearm on the date of the incident. ECF No. 13-10, PageID.855.

The petitioner testified in his own defense at trial.  He explained that he and Light had a disagreement over dry wall work that Light was supposed to do, but did not finish.  ECF No. 13-11, PageID.921.  When he saw Light at the house, he confronted him and punched him.  The petitioner then tried to enter the house, but was denied, and he and Light got into a fistfight.  Id. at 923-924.  When they were closer to Light's truck, Light tried to hit him with a wrench, but the petitioner grabbed it and struck Light with it a few times.  Id. at 925.  The petitioner heard a gunshot from the backyard and was hit in the shoulder.  Id. at 926.  He was bleeding and was again refused entry to the house.  When he tried to open his truck, he was shot in the stomach.  Id. at 927.  The petitioner then heard more gunshots.  He spoke briefly with Jarmonte Jones and Bradford Johnson when they approached him at the scene before he walked across the street and passed out.  Id. at 928-930.  The petitioner recognized his bloody shirt that was recovered from the scene, but did not know where the gun, holster, or ammunition came from.  Id. at 932-934.  He believed that Rodney Turner shot him because he was the person who came from the backyard where the shots were fired.  Id. at 934.  The petitioner denied shooting at anyone. Id. at 936-937.

In rebuttal, Lelother Richardson, the petitioner's girlfriend, testified that the petitioner possessed a chrome gun with a brown handle on the night of the shooting.  ECF No. 13-12, PageID.7, 9-11.

At the close of trial, the jury found the petitioner guilty of assault with intent to commit murder, felon in possession, and felony firearm, second offense.  ECF No. 13-12, PageID.1056.

Following his convictions and sentencing, the petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including the claims raised in his habeas petition.  The court denied relief on those claims and affirmed his convictions and sentences.  People v. Crawford, No. 319998, 2015 WL 5945372 (Mich. Ct. App. Oct. 13, 2015).  The petitioner filed an application for leave to appeal with the Michigan Supreme Court, which remanded the case to the Michigan Court of Appeals for further consideration of the petitioner's jury oath claim, but denied leave to appeal in all other respects.  In so ruling, the court found that an amended transcript of the November 26, 2013 trial court proceedings indicated that a jury oath was administered and remanded the case for the Michigan Court of Appeals to explain why it failed to consider the amended transcript. People v. Crawford, 499 Mich. 981, 882 N.W.2d 153 (2016).

-7-

On remand, the Michigan Court of Appeals remanded the case to the trial court for settlement of the record, concluded that the jury had been sworn, and affirmed the petitioner's convictions. People v. Crawford, No. 319998, 2016 WL 7130906 (Mich. Ct. App. Dec. 6, 2016). The petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Crawford, 501 Mich. 975, 906 N.W.2d 784 (2018).

The petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.     Trial court failed to administer a proper oath to the jury.

II.    Verdict of guilty based upon insufficient evidence.

III.   Sentence imposed violated constitutional guarantee against cruel and unusual punishment.

The respondent filed an answer to the petition contending that it should be denied because the third claim is procedurally defaulted and all of the claims lack merit. The petitioner filed a reply to that answer.

## III.    Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person

-8-

in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  Wiggins v. Smith, 539 U.S.

510, 520 (2003) (quoting <u>Williams</u>, 529 U.S. at 413); <u>see also</u> <u>Bell</u>, 535 U.S.

at 694. However, "[i]n order for a federal court find a state court's

application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous. The state

court's application must have been 'objectively unreasonable.'" <u>Wiggins</u>,

539 U.S. at 520-21 (citations omitted); <u>see also</u> <u>Williams</u>, 529 U.S. at 409.

"AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,' and 'demands that state-court decisions be given the

benefit of the doubt.'" <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (quoting

<u>Lindh</u>, 521 U.S. at 333, n. 7; <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)

(per curiam)).

A state court's determination that a claim lacks merit "precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S.

86, 101 (2011) (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

The Supreme Court has emphasized "that even a strong case for relief does

not mean the state court's contrary conclusion was unreasonable." <u>Id</u>.

(citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d),

"a habeas court must determine what arguments or theories supported or ...

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id; see also White v. Woodall, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  Woods v. Etherton, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme

Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)); Lockyer, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16.  The requirements of clearly established law are to be determined solely by Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief.  Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue.  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007)

(citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Lastly, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV.  Analysis

### A.  Jury Oath Claim

The petitioner first asserts that he is entitled to habeas relief because the trial court failed to administer an oath to the jury.  The respondent contends that this claim lacks merit.

The Michigan Court of Appeals reconsidered this claim on remand from the Michigan Supreme Court, found that the amended transcript (as verified by the trial court) showed that the jury had been sworn, and denied relief on this claim.  Crawford, 2016 WL 7130906 at *1.

The state court's decision is neither contrary to Supreme Court precedent  nor an unreasonable application of federal law or the facts.  First,

-13-

there is no Supreme Court precedent establishing a federal constitutional right to have an oath administered to an empaneled jury. See Baldwin v. State of Kansas, 129 U.S. 52, 56 (1889) (finding no federal issue in the allegedly improper swearing of a state court jury); Owens v. Haas, No. 15-CV-10985, 2017 WL 4176531, *9 (E.D. Mich. Sept. 21, 2017 (citing cases); Spearman v. Birkett, No. 05-CV-40006, 2006 WL 6032120, *11 (E.D. Mich. March 31, 2006) (denying habeas relief on claim that the jury was given a defective oath in a state prosecution). Consequently, the Michigan Court of Appeals' denial of relief on the jury oath claim cannot be said to be an unreasonable application of clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008); Carey v. Musladin, 549 U.S. 70, 77 (2006); Owens, 2017 WL 4176531 at *10.

Second, the petitioner's claim is belied by the record. The Michigan Court of Appeals found that the actual amended transcript showed that the jury had, in fact, been sworn. This factual finding is presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and has not been rebutted with clear and convincing evidence. Warren, 161 F.3d at 360-61. Moreover, the record of the amended trial transcript submitted to this Court shows that the trial court administered an oath to the empaneled jury. ECF

-14-

No. 13-7, PageID.458.  The petitioner thus fails to establish that any error, let alone a constitutional one, occurred.  Habeas relief is not warranted on this claim.

### B.    Insufficient Evidence Claim

The petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. In particular, he alleges that the prosecution failed to establish that he possessed a firearm and fired it.  The respondent contends that this claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting

Jackson, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  Id. at 788-89.

Under Michigan law, the elements of assault with intent to commit murder are:  (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder.  See Warren v. Smith, 161 F.3d

358, 361 (6th Cir. 1998) (citing Michigan law); People v. Ericksen, 288 Mich. App. 192, 195, 793 N.W.2d 120 (2010); Mich. Comp. Laws § 750.83.  The elements of felon in possession are:  (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines.  People v. Perkins, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), aff'd 473 Mich. 626, 703 N.W.2d 448 (2005); Mich. Comp. Laws § 750.224f.  The elements of felony firearm are:  (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense.  People v. Akins, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting People v. Avant, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  People v. Kern, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v. Jolly,

442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the

perpetrator, Kern, 6 Mich. App. at 409, see also People v. Johnson, 146

Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or

state of mind. People v. Dumas, 454 Mich. 390, 398, 563 N.W.2d 31

(1997); see also People v. Nowack, 462 Mich. 392, 402-03, 614 N.W.2d 78

(2000).

With these state law principles in mind and applying the Jackson

standard, the Michigan Court of Appeals denied relief on this claim. The

court explained in relevant part:

> Circumstantial evidence supports that defendant possessed the
> firearm and used it to assault Light with the intent to commit
> murder. Police found the .380 caliber gun at issue on the lawn
> next to where defendant lay injured from gunshot wounds. Police
> also recovered a holster for that gun, a set of keys, and a box of
> .380 caliber ammunition on the lawn. While Detroit Police Officer
> Mary Gross testified that she did not find any .380 shell casings
> at the scene of the shooting, other than the one jammed inside
> the gun, she also indicated that it was dark when she was
> searching for casings, there was very little light from street
> lamps in the area, and she could not recall whether she used a
> metal detector to search for casings that evening.
>
> Also, ample witness testimony supports that defendant shot and
> possessed the gun. Lolether Richardson, defendant's fiancé,
> testified that defendant owned a gun that matched the
> description of the .380 caliber gun found by police. Light testified
> that defendant shot him with a gun. Jermonte Jones testified that
> he saw defendant strike Light with the gun, although he did not
> witness the actual shooting. Brandon Johnson testified that he

saw defendant firing the gun and then reloading its clip.
Tradnaha Turner also testified that she saw defendant lift his
gun and pursue Johnson. On the other hand, defendant denied
possessing a gun, ammunition, or a holster, denied shooting
Light or shooting at Jones or Johnson, and testified that all of
these witnesses were lying in order to cover up the fact that
defendant was actually shot by Rodney Turner. After hearing
these inconsistent stories, the jury plainly believed the testimony
of the prosecution's witnesses. This Court will not "interfere with
the jury's determinations regarding the weight of the evidence
and the credibility of the witnesses." People v. Unger (On
Remand), 278 Mich App 210, 222; 749 NW2d 272 (2008). In
total, there was ample evidence to support the jury's conclusion
that defendant possessed the .380 caliber gun.

Crawford, 2015 WL 5945372 at *6-7.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of Supreme Court precedent or

the facts.  The prosecution presented sufficient evidence to establish the

petitioner's guilt of assault with intent to commit murder, felon in possession,

and felony firearm through the testimony of the victim, Frederick Light, the

other witnesses who were at the house during the shooting, and the

petitioner's girlfriend, as well as reasonable inferences from that testimony

and the evidence found at the scene.  To be sure, a victim's testimony alone

can be constitutionally sufficient to sustain a conviction.  See Tucker v.

Palmer, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).  Such testimony

and evidence was sufficient to establish that the petitioner possessed a

firearm at the time of the incident and that he used it to strike and to shoot Light so as to support his convictions.

The petitioner challenges the credibility of the witnesses and the jury's evaluation of the evidence presented at trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.  The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that the petitioner committed assault with intent to commit murder, felon in possession, and felony firearm.  Habeas relief is not warranted on this claim.

## C.    Sentencing Claim

Lastly, the petitioner asserts that he is entitled to habeas relief

because his sentences constitute cruel and unusual punishment.  The respondent contends that this claim is procedurally defaulted and that it lacks merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review.  Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  The petitioner's sentences are within the statutory maximums for his offenses. See Mich. Comp. Laws §§ 750.83 (authorizing a maximum sentence of life imprisonment), 750.224f (authorizing a maximum sentence of 5 years imprisonment, 750.227b (authorizing a maximum sentence of 5 years imprisonment for a second offense, to be served consecutively to other sentences).  Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

The petitioner asserts that his sentences are disproportionate and constitute cruel and unusual punishment due to his age and his medical

condition. He raised this claim on direct appeal of his convictions. The

Michigan Court of Appeals reviewed the claim for plain error and denial

relief. The court explained in relevant part:

> The Eighth Amendment of the United States Constitution
> provides, "[e]xcessive bail shall not be required, nor excessive
> fines imposed, nor cruel and unusual punishments inflicted." US
> Const, Am VIII. The Michigan Constitution provides, "cruel or
> unusual punishment shall not be inflicted...." Const 1963, art 1, §
> 16. "In determining whether a sentence is cruel or unusual [this
> Court] look[s] to the gravity of the offense and the harshness of
> the penalty, comparing the penalty to those imposed for other
> crimes in this state as well as the penalty imposed for the same
> offense by other states and considering the goal of
> rehabilitation." People v. Poole, 218 Mich App 702, 715; 555
> NW2d 485 (1996). "[A] sentence that is proportionate is not cruel
> or unusual punishment." People v. Powell, 278 Mich App 318,
> 323; 750 NW2d 607 (2008), citing People v. Drohan, 264 Mich
> App 77, 92; 689 NW2d 750 (2004). Where a sentence falls
> within the appropriate guidelines range, it is presumed to be
> proportionate. Id., citing People v. Broden, 428 Mich 343, 354-
> 355; 408 NW2d 789 (1987).
>
> Defendant cannot surmount the presumption that his sentence is
> proportionate. Defendant's sentence for assault with intent to
> murder, as he admits, is well within the appropriate guidelines
> range. Defendant argues that the trial court violated his
> constitutional guarantee against cruel and unusual punishment
> because the minimum sentence it imposed is one year above
> the midpoint for the minimum sentence range for his crime.
> Defendant further argues that his sentence is cruel and unusual
> because he will not be eligible for parole until he is 65 years old,
> and the shooting that led to his conviction left him gravely
> injured, such that he may never walk again. Defendant's
> arguments fail.

-22-

Defendant cites no caselaw to support his argument that his advanced age or endangered health at the time of his conviction allows for a finding that his sentence is disproportionate. Also, defendant did not demonstrate that compared to the penalty imposed for other crimes in this state and other states, that his sentence was cruel or unusual. People v. Brown, 294 Mich App 377, 390; 811 NW2d 531 (2011). This Court is not required to search for support for a defendant's arguments. People v. Payne, 285 Mich App 181, 195; 774 NW2d 714 (2009) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Furthermore, this Court has held that a defendant's age is insufficient to overcome the presumptive proportionality of his sentence, particularly when the defendant has a lengthy criminal history of committing violent offenses. People v. Bowling, 299 Mich App 552, 558-559; 830 NW2d 800 (2013). This same reasoning applies to cases where the defendant claims to have substantial health problems. Defendant, like the defendant in Bowling, has a lengthy criminal record. Defendant was convicted of five felonies prior to the three felonies he was convicted of in the instant case. Two of defendant's felony convictions were for possession with intent to deliver narcotics, but the remaining felony convictions were for armed robbery and felony-firearm, which are plainly violent offenses. Given his felony history, defendant cannot establish any plain error affecting his substantial rights.

Defendant also seems to suggest that his sentence is cruel and unusual because it was based on insufficient evidence. As this Court noted in Powell, if that were true, "the remedy would be to vacate his conviction." Powell, 278 Mich App at 323. Nonetheless, as discussed above in Issue II, supra, defendant's convictions were not based on insufficient evidence.

Crawford, 2015 WL 5945372 at *7-8 (footnote omitted).

-23-

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The petitioner's claim that his sentence is disproportionate is not cognizable on federal habeas review because it is a state law claim.  See Harmelin v. Michigan, 501 U.S. 957, 965 (1991) (ruling that the Eighth Amendment does not require strict proportionality and that Michigan prisoner's claim that his sentence was disproportionate is not cognizable on habeas review); Kissner v. Palmer, 826 F.3d 898, 904 (6th Cir. 2016).  There is no federal constitutional right to individualized sentencing.  United States v. Thomas, 49 F.3d 253, 261 (6th Cir. 1995).

Additionally, to the extent that the petitioner contests the state court's interpretation and application of state law as to his sentencing, he is not entitled to relief.  It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987).  Habeas relief does not

lie for perceived errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  The petitioner thus fails to state a claim upon which federal habeas relief may be granted as to any such state law issues.

Moreover, the petitioner fails to establish that his sentences constitute cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  Harmelin, 501 U.S. at 965.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  Austin v Jackson, 213 F.3d 298, 302 (6th Cir. 2000) (internal citation omitted).  As discussed, the petitioner's sentences are within the statutory maximums – as well as the guideline range.  The state trial court thus acted within its discretion in imposing his sentences and there is no extreme disparity between his crime and sentences so as to offend the Eighth Amendment.  Habeas relief is not warranted on this claim.[1]

---

[1]Given this determination, the Court need not address the procedural default issue.

## V.    Conclusion

For the reasons stated, the Court concludes that the petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal this decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  The petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot

be taken in good faith.  See FED. R. APP. P. 24(a).  Accordingly, the Court

**DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

Dated: February 12, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 12, 2021, by electronic and/or ordinary mail and also on
Darrin Crawford #193496, Macomb Correctional Facility,
34625 26 Mile Road, New Haven, MI 48048.

s/Brianna Sauve
Deputy Clerk